819 So.2d 895 (2002)
Arnaldo VELEZ and Maria C. Arriola Velez, Appellants,
v.
The CITY OF CORAL GABLES, Nelson Mallo and Annie L. Mallo, Appellees.
No. 3D01-3263.
District Court of Appeal of Florida, Third District.
June 19, 2002.
*896 Arnaldo Velez, for appellants.
Elizabeth M. Hernandez, City Attorney; Akerman, Senterfitt & Eidson and Nina K. Brown, Miami, and Jennifer Cohen Glasser and Manuel Vazquez, Coral Gables, for appellees.
Before GREEN, FLETCHER, and RAMIREZ, JJ.
FLETCHER, Judge.
Appellees Nelson Mallo and Annie L. Mallo own a lot [lot 22] in the City of Coral Gables upon which lot they wish to construct a single-family dwelling. They purchased lot 22 from Felix and Conchi Ramirez-Seijas (non-parties here) who had owned both lot 22 and a contiguous lot [lot 21], which contiguous lot contains a single-family home. In addition, a concrete block wall extends along the northern perimeter of both lots 21 and 22. A shorter wall with a gate once stood on the southern end of lot 21 and extended four feet from lot 21 into lot 22.
Appellants Arnaldo Velez and Maria C. Arriola Velez reside in their home on lot 26 and part of lot 25 located within the immediate neighborhood of lots 21 and 22. The Velezes are contesting the right of the Mallos to construct a residence on lot 22, notwithstanding that the lot meets the general code requirements therefor. The City sides with the Mallos, having taken the position through a "building site letter" issued by City staff that lot 22 is a legitimate site upon which to construct a residence.
The Mallos' difficulty, as raised by the Velezes, lies with section 12-2 of the Coral Gables Zoning Code which provides in pertinent part:
"(b) In order to maintain open space, neighborhood character, property values and visual attractiveness of residential areas, wherever there may exist a single-family residence, duplex building or any auxiliary building or structure including, but not limited to, swimming pools, tennis courts, walls, fences or any other improvement which was heretofore constructed on property containing one or more platted lots or portions thereof, such lots shall thereafter constitute only one building site and no permit shall be issued for the construction of more than one residence or duplex building on the site."[1]
Pursuant to this section, lots 21 and 22 constitute only one building site. As the site already contains the one allowable residence (that of the Ramirez-Seijas family on lot 21), no permit can issue for another residence on the site even if the auxiliary structures on lot 22 are removed. Thus the purpose of section 12-2to maintain open space, neighborhood character, property *897 values and visual attractiveness of residential areasis promoted.
This does not mean that persons in the posture of the Mallos are not provided by the Code with an administrative procedure to pursue in the event that they feel aggrieved. Section 12-3 of the City's Zoning Code provides in pertinent part:
"Any change from the foregoing provisions for the purpose of establishing building sites, or separation of building sites shall require special approval by ordinance duly passed and adopted by the City Commission after first having been heard before the Planning and Zoning Board at a public hearing, at which all interested persons shall be afforded an opportunity to be heard...."
Thus, although the Mallos are precluded from building a residence on lot 22 because it is part of a building site which already contains a residence (on lot 21), section 12-3 of the City's Zoning Code presents the Mallos with a procedure to seek the separation of lots 21 and 22 into two building sites.[2] It also provides other interested persons, such as the Velezes, with notice and the opportunity to present their positions, whether in support of or in opposition to the separation.
The Mallos and the City, however, contend that section 12-2 does not apply to lots on which structures were built without building permits, but only applies to lots on which structures were built pursuant to building permits. Thus they contend, if the walls on lot 22 were built without a permit, lot 22 is ipso facto a building site without the necessity of the Mallos going through the section 12-3 hearing process.
We reject the contention that section 12-2 does not apply to structures built without a permit. A plain reading of this unambiguous code section demonstrates that it applies to all structures, whether permitted or not:

"[W]herever there may exist a single-family residence, duplex building or any auxiliary building or structure ... which was heretofore constructed ...." [e.s.]
No differentiation is made by this section between permitted and unpermitted structures, and neither the city staff nor this court can read additional language into the legislation in order to alter its meaning. It must be read as written. Nicoll v. Baker, 668 So.2d 989 (Fla.1996); Holly v. Auld, 450 So.2d 217 (Fla.1984).
Further, even if we found the code section to be ambiguous, we would be required to avoid a construction thereof which is unreasonable. Clearly the very purpose of section 12-2 totally negates any ostensible reason to distinguish between permitted and non-permitted structures. Persons who purchased their homes in the neighborhood would have relied on its appearance and character, not on permit issuance.[3] Indeed, exempting structures built without permits from the operation of section 12-2 would turn reason on its head. Under such illogical construction owners who violate the building code by skipping the permitting process may gain the advantage of an additional building site, *898 while Joe and Jane Citizen who honor their building permit obligation do not.[4]
The interpretation urged by the City and the Mallos also raises the spectre of denial of equal protection of the law, as suggested by the Velezes. An administrative agency has the burden of providing a reasonable explanation for inconsistent results based upon similar facts. St. Johns North Utility Corp. v. Florida Public Serv. Comm'n, 549 So.2d 1066 (Fla. 1st DCA 1989); Amos v. Department of Health & Rehab. Servs., 444 So.2d 43 (Fla. 1st DCA 1983). As we have already observed there is no reasonable explanation for treating structures built without permits differently from structures built with permits in relation to accomplishing the goals of section 12-2 of the City's Zoning Code. However, we do not reach that issue in light of the proper construction of section 12-2 laid out herein, which construction treats permitted and non-permitted structures uniformly.
Accordingly, as section 12-2 applies equally to structures built without permits as it does to structures built with permits, we reverse the final judgment in favor of the appellees and remand with instructions to enter judgment in accordance with this opinion.
Reversed.
NOTES
[1] Section 12-2(c) adds the proviso that the demolition or removal, voluntarily or involuntarily, of the residence or duplex building leaves the lots as one building site.
[2] This is the only procedure available, which precludes the City staff's practice of issuing such "building site letters" as issued here.
[3] In fact the trial court found in its final judgment (paragraph 5), at R.277:

"Coral Gables records go back nearly 70 years. Notwithstanding the City's efforts over the years to maintain complete records, permitting records have gaps, and some are missing and incomplete. Thus, it is impossible to ascertain whether the walls were ever permitted."
[4] Thus lending credence to the adage that no good deed goes unpunished.